THEODORE A. LOBSENZ, PLAINTIFF, v.
MICUCCI HOLDINGS, INC., DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided March 30, 1973.

*Mr. Theodore A. Lobsenz, pro se.*

*Mr. Bernard Kimmel* for Sic & Due, Inc., assignee of defendant mortgagor Micucci Holdings, Inc. (*Mr. Harvey Goldberg* of counsel).

KOLE, J. S. C. The sheriff's sale in this mortgage foreclosure action took place on February 5, 1973. The mortgagee in possession was the purchaser at the sale.

On February 20, 1973 the moving party herein, Sic & Due, Inc., obtained an assignment from the mortgagor of certain items of personal property and "the premises located at 33–35 Monroe St., Garfield, N. J.," the property in question. The consideration stated in the assignment is $5,000.

It is admitted, however, that the payment of the aforesaid $5,000 is contingent upon this court's allowing the assignee to redeem. The mortgagor has received no moneys for the assignment and will receive none unless there is court approval of the relief sought by Sic & Due, Inc. — *i. e.,* allowing it to exercise the mortgagor's right of redemption. It should also be noted that the sum of $5,000 is not apportioned between the personal property and the premises in question. The "personal property" consists of several items which, taken together, apparently represent a heating system of indeterminate value on the facts presented but which was apparently 100% financed when installed.

Sic & Due seeks, as assignee of the mortgagor's rights in the subject premises, to stand in the mortgagor's shoes in order to exercise the post-sale right of redemption recognized in *Hardyston Nat'l Bank v. Tartamella,* 56 *N. J.* 508 (1970). Under *Hardyston* the mortgagor is permitted to redeem "within the ten-day period fixed by *R.* 4:65–5 for objections to the sale and until an order confirming the sale if objections are filed under the rule." (At 513).

*R.* 4:65–5 directs the sheriff to deliver a deed pursuant to the sale "unless a motion for the hearing of an objection to the sale is served upon him within 10 days after the sale or at any time thereafter before the delivery of the conveyance."

There is a question here as to whether an "objection" was filed under the rule within the meaning of the *Hardyston* case and, therefore, whether movant is out of time to redeem under the rule and *Hardyston.* This issue need not be dealt with since the purchaser at the foreclosure sale (who is also the mortgagee), in opposing the redemption in this case, has not raised the issue. In view of the more significant question of policy hereinafter discussed, I shall assume, without deciding, that the movant has acted in time. Again, I shall assume, without deciding, the validity of the assignment of the mortgagor's interest in the real estate to the movant.

In *Hardyston* the Supreme Court determined, *as a matter of policy,* that the mortgagor should be permitted to redeem his property after a foreclosure sale. In so holding the court observed:

"The situations are probably rare in which a mortgagor can profitably assert a right to redeem after the sheriff's sale, but the right should be his unless some public interest would be significantly offended."

I, of course, have sympathy for a defaulting mortgagor who will come out $5,000 ahead by being permitted to redeem. But such sympathy should not blind the court to the implications of the contingency type of assignment of the right to redeem here involved.

I conclude that in the present case allowing redemption *would* significantly offend a public interest — the exception stated by *Hardyston*. The principal of Sic & Due was present at the foreclosure sale, but did not bid. Subsequent to the sale he visited the mortgagee who had purchased the property at the sale and obtained information on the approximate rents and some expenses of the premises. Armed with this knowledge Sic & Due's representative apparently considered the property a good investment. Some 15 days after the sale he obtained an assignment of the mortgagor's rights in the premises for $5,000 *contingent* upon court approval of the transaction.

In effect, then, Sic & Due seeks court approval of a contingent private sale, negotiated with the mortgagor, of his right to redeem after the public sale, made with knowledge of the maximum bid and income and expense figures (obtained after the sheriff's sale) and free from any competitive bids. The court's approval of this practice could, in my view, seriously impede the judicial process in mortgage foreclosures and lend aid to disruption of orderly mortgage foreclosure sale procedures by speculators in mortgagors' rights.

The situation presented seems closely akin to that which confronted the Supreme Court in *Bron v. Weintraub*, 42 *N. J.* 87 (1964). *Bron* involved certain speculators who had learned of a defect in the title to lands that had arisen some 20 years earlier in a tax foreclosure proceeding. The speculators had obtained quit-claim deeds from the heirs in whom title apparently lay, for a nominal amount. The Supreme Court condemned, on public policy grounds, the intrusion by third persons seeking only to further their own interests to the detriment of existing interests of owners of the land. In reaching its conclusion the court noted that, as distinguished from the initial sale for taxes, to which the statute seeks to attract third parties by means of public notice, there is no like policy to invite the public to participate with respect to the foreclosure of the right to redeem. Rather, the foreclosure process concerns only the holder of the tax sale

certificate and the holders of existing interests in the property. 42 *N. J.* at 92.

On the facts in *Bron* it appeared that the speculators had learned of the title defect by virtue of a published notice intended to give notice to the heirs who might claim an interest in the premises and who could not be located for normal service. As the speculators had done nothing "illegal" under existing statute or case law, the householders seeking to quiet title to their properties appealed to public policy. After discussing the ever-changing dimensions of the concept of public policy, and conceding that no precedent was precisely in point, the court declared that "public policy is more than a mere summation of its past applications." Finally, the court quoted from *Latham v. Father Divine,* 299 *N. Y.* 22, 85 *N. E.* 2d 168, at 170, 11 *A. L. R.* 2d 802 (Ct. App. 1949), as to the applicability of the concept of a constructive trust as being "limited only by the inventiveness of men who find new ways to enrich themselves unjustly by grasping what should not belong to them." Concluding that the common conscience undoubtedly condemns the conduct of the speculators before the court, a constructive trust was imposed on the lands in question for the benefit of the homeowners, subject only to reimbursement of the $400 paid by the speculators to the heirs.

It should be observed that *Bron* involved substantial improvements to the lands in question by the homeowners in reliance on their title, many of which might have been lost had the speculators prevailed. In other words, there were significant equities in favor of the homeowners in *Bron.* Nonetheless, the holding has been interpreted as being based on public policy, not on a balancing of the equities. See *Harvey v. Orland Properties, Inc.,* 108 *N. J. Super.* 493 (Ch. Div. 1970), aff'd 118 *N. J. Super.* 104 (App. Div. 1972).[1]

---

[1] In the present case the mortgagee has argued that it would be inequitable to allow redemption by a stranger to the title because, as a

In addition, as noted in *Harvey*, the Legislature has acted to prevent the intrusion of speculators into the tax sale redemption area by enactment of an amendment to *N. J. S. A.* 54:5–89.1 (*L.* 1967, *c.* 149), which added:

No person, however, shall be admitted as a party to such action, nor shall he have the right to redeem the lands from the tax sale whenever it shall appear that he has acquired such interest in the lands for a nominal consideration after the filing of the complaint, except where such transferee is related by blood or marriage to, or who, because of other close or personal relationship with the transferor, would in normal course be a party to an instrument for little or no consideration, or where such party acquired his interest at a judicial sale.

The "statement" accompanying the bill which became the above part of the statute clearly reveals the purpose of the amendment to be elimination of the practice condemned in *Bron*. In summing up the existing situation, the sponsors wrote:

The scheme of these intermeddlers is simple. They permit the purchaser of the tax sale certificate to invest his capital, hold the lien for the statutory period, engage counsel to examine the title, make inquiry as to the whereabouts of the defendants, their heirs, devisees and personal representatives, prosecute the case up to the point of completion and upon being satisfied at that time that the defendants do not intend to redeem, such intermeddlers offer the defendants a nominal sum for a deed and they thereupon step into the shoes of the purchaser of the lien. At that stage they find the defendants very

---

mortgagee in possession from October 1, 1971 to September 30, 1972, he expended substantial time and effort and "improved" the property in question with the result that it now can be operated profitably. This contention is without merit, for if redemption were allowed the mortgagee would be entitled to a credit for all proper expenses in connection with the property in his accounting of the income received by him while in possession. This is merely a matter of ascertaining the actual amount due on the mortgage. *Orange Land Co. v. Bender*, 96 *N. J. Super.* 158, 165, 166 (App. Div. 1967). The mortgagee is, therefore, in the same position whether the property is sold at sheriff's sale or redeemed.

Accordingly, this case is not one of conflicting equities. Rather, it must be viewed purely in terms of public policy.

amenable to any suggestion that they might make because they have nothing to lose — the defendants have already determined to abandon their interests. In the meantime, the intermeddlers have made no investment of any kind and fully exploit the professional services of the attorney for the plaintiff at little or no cost. Obviously, this imposes a loss on the purchaser of the tax sale certificate.

This iniquitous practice constitutes a burden on the purpose of the Tax Sale Revision, namely — the collection of revenues. No one will purchase at tax sales under these conditions. [*R. S. Cum. Suppl.* 54:5–89.1 (*L.* 1967, *c.* 149)]

Of course, meaningful differences exist between tax and mortgage foreclosure practice. Nonetheless, the course of conduct which the movant herein would have this court approve is strikingly similar to that condemned by both our courts and Legislature in the tax field. Contingent assignments of the right of redemption after sale is but a different *form* of "traffic in the misfortune of others" than that discussed in *Bron*, even where, as here, more than a nominal amount is paid the mortgagor for his rights, including his right to redeem.

In a post-mortgage foreclosure sale redemption situation, as in the foreclosure of the right to redeem under a tax sale, there is no policy inviting the public to participate. Rather, the apparent purpose of the extension of the right to redeem for a time after the sheriff's sale by the Supreme Court in *Hardyston* and under the rule is to benefit the *mortgagor* in those rare cases when *he* has the means to redeem. Similarly, as in *Bron*, the moving party here has acquired the knowledge on which it has acted from sources not intended to be so used and seeks to turn that information to its own again, thereby depriving the purchaser at the sheriff's sale of the efficacy of his bid. This kind of practice does not accord with the purpose of *Hardyston* or *R.* 4:65–5.

■ Further, it seems clear that allowing redemption after a mortgage foreclosure sale by an intermeddler will have the long-term effect of discouraging bidding at sheriff's sales. A prospective purchaser-bidder should be able to rely

on the fact that by outbidding all others at the sale he will acquire the property, subject only to the relatively slight risk that in rare situations the mortgagor may be able to redeem. *Cf. Hardyston,* 56 *N. J.* at 513, wherein the court recognized that mortgagors probably could profitably redeem only in rare situations and expressed the belief that such a right of redemption would not discourage bidding at the sale.

Finally, I find the kind of conduct of the intermeddler in this case should not be countenanced by the court. Sic & Due's representative attended the sheriff's sale but did not bid. Thereafter he obtained certain financial data respecting the property in question from the purchaser at the sale, and finally transacted a "private" sale with the mortgagor whose bargaining position mut be presumed, at best, to have been very weak. This course of conduct — which is in practical effect simply a device to circumvent the sheriff's sale — cannot claim the benefits of the rule laid down in *Hardyston.* On the contrary, under the facts here involved, it demands immediate condemnation as an inappropriate endeavor to use an equitable remedy fashioned for an entirely different purpose. *Cf. Bron, supra.*

The movant argues that the sale is void and should be set aside for failure to give notice thereof to the owner under *R.* 4:65–2. It is evident that the owner knew of the sale, when he gave the assignment to movant and in effect has abandoned the property. Failure to give notice under the circumstances did not prejudice the owner and certainly cannot benefit the movant.

Accordingly, the sale will be confined. The relief sought by Sic & Due, Inc. is denied.